**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ONYX ENTERPRISES INTERNATIONAL CORP.<br><br>Plaintiff,<br><br>v.<br><br>REGENCY GLOBAL SOLUTIONS, INC. d/b/a PRECHARGE RISK MANAGEMENT SOLUTIONS,<br><br>Defendant. | Civil Action No.: 16-cv-6572<br><br><br><br>**COMPLAINT** |

Plaintiff Onyx Enterprises International Corp. ("Plaintiff"), by and through its undersigned counsel, as and for its complaint against defendant Regency Global Solutions, Inc. d/b/a PreCharge Risk Management Solutions ("Defendant"), alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for damages arising from Defendant's breach of contract and breach of the covenant of good faith and fair dealing arising from a purported service offered by the Defendant to warranty credit card transactions submitted to Plaintiff by customers around the world.

2. Plaintiff reserves all rights to move the Court for leave to amend its pleading following a period of comprehensive discovery.

**THE PARTIES**

3. At all relevant times herein, Plaintiff was, and remains, a corporation duly organized and existing pursuant to the laws of the State of New Jersey, with its main offices located

in Cranbury Township, New Jersey.  Plaintiff is in the business of marketing and distributing specialty automotive products throughout the world.

4.     Upon information and belief, Defendant is a corporation duly organized and existing pursuant to the laws of the State of Delaware, with its main offices located at 130 Seventh Avenue, #129, New York, New York 10011.

## SUBJECT MATTER JURISDICTION

5.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are each citizens of different States, namely New Jersey and New York, respectively, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6.     Plaintiff requests that the Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims that are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy pursuant to Article III of the United States Constitution.

## VENUE

7.     Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in the Southern District of New York because Defendant maintains its principal place of business in New York County, New York.

8.     Alternatively, venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

**A.    Plaintiff And Defendant Enter Into A Contract For Credit Card Transaction Warranty Services**

9.     Plaintiff, an e-Commerce retailer, is in the business of marketing automotive and consumer goods worldwide.

10.    Much of Plaintiff's business consists of orders placed by customers over the Internet and paid for using credit cards. These types of orders are generally termed "Card Not Present" transactions by the various credit card processing networks like Visa, MasterCard, et al., because merchants accepting credit cards over the Internet do not physically handle or "swipe" credit cards at their point of sale terminals. Rather, merchants participating in Card Not Present transactions charge customer credit cards solely by way of their number, card security code (consisting of three digits) and the customer's billing address.

11.    Due to their nature, Card Not Present transactions routinely result in a higher incidence of credit card fraud than other types of credit card transactions. To screen, mitigate and prevent potentially fraudulent transactions, Plaintiff uses a variety of methods to verify the legitimacy of orders before consummating the transactions by charging the credit card and shipping the goods.

12.    However, because Plaintiff is not an expert in the specific field of fraud prevention, it turned to Defendant for assistance.

13.    Defendant's offering to Plaintiff consisted of two services. First, Defendant offered to use its expertise and proprietary software and methodology to evaluate transactions presented to it by the Plaintiff and return a "Profile Response." A Profile Response is a

determination by the Defendant as to the likelihood of whether or not a proposed transaction will result in a "chargeback."[1] (*See* Ex. 1 – Contract at 1).

14. Defendant's Profile Response could be either positive or negative. A positive Profile Response (termed an "Acceptable Transaction") means that Defendant has determined that it is more likely than not that a proposed transaction will not result in a chargeback. A negative Profile Response (termed a "Rejectable Transaction") means that Defendant has determined that it is more likely than not that a proposed transaction will result in a chargeback. (Ex. 1 – Contract at 1). Based on the Profile Response provided by Defendant, Plaintiff could decide either to proceed with a transaction, request additional information from the ordering party, or deem the risk of a chargeback too high and reject the transaction. The cost for this service was $0.40 per domestic transaction and $0.90 per international transaction. (*Id.* – Addendum to Contract).

15. The second service Defendant offered Plaintiff was a warranty for Acceptable Transactions. Pursuant to the warranty, if a transaction deemed by Defendant to be an Acceptable Transaction nevertheless resulted in a chargeback, Defendant would compensate Plaintiff for the amount of the chargeback. (Ex. 1 – Contract ¶ 1(c)). The cost for this service was 0.35% of the transaction amount per domestic transaction, and 1.00% of the transaction amount per international transaction. (*Id.* – Addendum to Contract).

---

[1] A "chargeback" is a reversal of a transaction between a merchant and a credit card holder as a result of some type of dispute between the customer and the merchant. In cases of credit card fraud, the chargeback results from a legitimate credit card holder disputing a charge placed on his or her account by the fraudster. Pursuant to the rules of the various credit card processing networks, as well as the federal Fair Credit Billing Act, 15 U.S.C. § 1643, a legitimate card holder's responsibility for unauthorized charges is minimal, if any. Accordingly, if a merchant accepts a credit card transaction and ships goods to the purported customer, and the transaction is subsequently "charged back," the loss is borne by the merchant who will usually not recover the goods once they are shipped.

16.     Throughout the parties' relationship, there were several instances of Acceptable Transactions being charged back.  With respect to warranty payments for those occurrences, Defendant instructed Plaintiff to set off the amount of the chargebacks against the fees Plaintiff owed to Defendant for a particular month.

**B.     Plaintiff Incurs Vast Chargeback On Acceptable Transactions**

17.     Beginning on December 4, 2015 and continuing to the present day, Plaintiff was inexplicably subjected to chargebacks on nearly one thousand orders deemed Acceptable Transactions by Defendant and part of Defendant's warranty service.  As of August 6, 2016, the amount of chargebacks on transactions deemed Acceptable Transactions by the Defendant, and correspondingly, the warranty amount due to Plaintiff on these Acceptable Transactions is $499,618.88.  This amount exceeds the fees owed (and paid) by Plaintiff to Defendant by a wide margin.

18.     Prior to the commencement of this action, Plaintiff demanded on numerous occasions, through multiple means of communication, that Defendant pay the warrantied amount. This sum was due and owing pursuant to the terms and conditions governing payment of warrantied items within the Contract at the time of Plaintiff's demand for payment.

19.     On numerous occasions, through multiple means of communications, Defendant has expressly stated and represented that it would pay the warrantied amount as requested by the Plaintiff.

20.     No part of said sum has been paid, and there is now due, owing and unpaid from Defendant to Plaintiff the above-referenced amount, together with interest thereon at the legal rate from the date of breach.

21.     The Contract also provides for payment of costs and of attorney fees, for any cause of action arising thereunder.   Such costs and fees are due and owing in a sum to be proven at the time of trial.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

22.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth at length herein.

23.     Plaintiff and Defendant entered into the Contract for the purposes of Defendant reviewing, providing screening and opining on various credit card transactions proposed to it by Plaintiff, determining whether or not each credit card transaction is valid or a potentially fraudulent transaction, and warrantying Acceptable Transactions against the risk of chargebacks and fraud.

24.     Defendant breached its contractual obligations to Plaintiff by failing to compensate it for numerous chargebacks presented despite the underlying transactions being deemed by Defendant as Acceptable Transactions.

25.     Plaintiff has complied with its contractual obligations to Defendant, or has been properly excused therefrom.

26.     As a result of Defendant's breach of contract, Plaintiff has been damaged.

WHEREFORE, Plaintiffs prays for judgment against Defendant for:

    i.     Compensatory damages in the amount of at least $499,618.88;

    ii.    Attorney's fees pursuant to the Contract;

    iii.   Interest and costs of this action; and

    iv.    Such other and further relief as the Court may deem just and proper.

## SECOND CAUSE OF ACTION
### (Recovery Pursuant to Unjust Enrichment)

27. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth at length herein.

28. Defendant derived significant revenue from the fees paid to it by Plaintiff.

29. Based on its failure and refusal to compensate Plaintiff for its losses, Defendant would be unjustly enriched if it is not obligated to compensate Plaintiff.

WHEREFORE, Plaintiffs prays for judgment against Defendant for:

   i. Compensatory damages;

   ii. Disgorgement of profits as a result of Defendant's unjust enrichment;

   iii. Attorney's fees pursuant to the Contract;

   iv. Interest and costs of this action; and

   v. Such other and further relief as the Court may deem just and proper.

## THIRD CAUSE OF ACTION
### (Recovery Pursuant to Account Stated)

30. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth at length herein.

31. Plaintiff presented an account to Defendant over several months and through different mediums of communications.

32. Defendant did not dispute the veracity of the account or the calculations of the amount due.

33. Defendant was obligated to pay the account stated to Plaintiff.

7

34. Defendant has failed to pay the account stated to Plaintiff.

WHEREFORE, Plaintiffs prays for judgment against Defendant for:

    i. Compensatory damages;

    ii. Attorney's fees pursuant to the Contract;

    iii. Interest and costs of this action; and

    iv. Such other and further relief as the Court may deem just and proper.

Dated: August 19, 2016

**THE GINZBURG LAW FIRM, P.C.**

By: /s/ *Daniel Ginzburg*
Daniel Ginzburg (DG-2824)
<u>Mailing Address</u>
151 Highway 516, Unit 736
Old Bridge, New Jersey 08857
Tel:  862-702-8248
daniel@ginzburglawfirm.com
*Counsel to Plaintiff*
*Onyx Enterprises International Corp.*